IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK11-40267-TLS |
| | ) | |
| JMJ LAND, LLC, | ) | CH. 12 |
| | ) | |
| Debtor. | ) | |

**ORDER**

Trial was held in Lincoln, Nebraska, on November 9, 2011, on the amended Chapter 12 plan (Fil. #55) filed by Debtor, and an objection (Fil. #63) filed by the Federal Deposit Insurance Corporation ("FDIC"). Brian J. Koenig appeared for Debtor ("JMJ"), and Michael T. Eversden and James J. Niemeier appeared for the FDIC, as receiver for Sherman County Bank. Documentary evidence and live testimony were received. Counsel submitted post-trial briefs, and this matter is now ready for decision.

For the reasons stated below, the amended Chapter 12 plan (Fil. #55) is not confirmed.

JMJ filed this Chapter 12 proceeding on February 4, 2011. Subsequently, the FDIC filed its proof of claim asserting that it is owed in excess of $5,900,000.00 pursuant to several promissory notes evidencing loans made to Duane and Carolyn Jacobs (principals in JMJ). The proof of claim further asserts that the loans are secured by agricultural property and improvements now owned by JMJ.

Prior to the bankruptcy filing, Mr. and Mrs. Jacobs had commenced litigation against the FDIC as receiver of Sherman County Bank asserting various claims for recovery related to the handling of their loans. After the bankruptcy was filed, JMJ filed an adversary proceeding asserting similar theories of recovery against the FDIC. JMJ also objected to the amount of the claim filed by the FDIC. The pre-petition litigation by Mr. and Mrs. Jacobs, the adversary proceeding filed by JMJ, and the issue as to the balance due to the FDIC have all been consolidated for litigation in the United States District Court.

The parties appear to be in agreement that the FDIC has a valid lien on the real property of JMJ. They are also in agreement that the lien of the FDIC is junior to the first lien of Trotter, Inc. in the amount of $315,000.00. The parties, however, disagree as to the value of that real property.

JMJ submitted an amended plan which provides for the payment of interim interest-only payments during the pendency of the litigation in the United States District Court since that litigation will ultimately determine the balance due to the FDIC. After the resolution of that litigation becomes final, the amended plan proposes to pay the allowed secured claim of the FDIC amortized over 30 years with interest pursuant to Local Rule 3023-1 and a balloon payment on the date which is 10 years following the effective date of the plan.

The FDIC filed a number of objections, but the primary objections pertain to the value of the real property (and thus the value of the FDIC's secured claim) and the feasibility of the plan.[1]

The first issue is the value of the FDIC's collateral. Under 11 U.S.C. § 1225(a)(5), if the holder of a secured claim has not accepted the plan, and if the plan does not propose the surrender of property to the secured creditor, then, among other things, the value as of the effective date of the plan of property to be distributed under the plan must not be less than the allowed amount of such claim.

Most of the trial was spent advancing competing views as to the value of the property. JMJ presented the testimony of Steve Wolf, an auctioneer and real estate broker in the county where the property is located. Mr. Wolf did not prepare a formal appraisal and, in fact, is not a licensed appraiser. Instead, he provided a broker's market analysis. Mr. Wolf testified, based on his experience in the industry and his review of the property, that it has a present value of $3,060,000.00. After deducting the prior lien of $315,000.00, that would leave $2,745,000.00 as the maximum value of the FDIC's secured claim.

The FDIC presented the testimony and appraisal of C.M. Thoene. Mr. Thoene has more than 15 years experience as a licensed appraiser in the State of Nebraska and has been a member of the American Society of Farm Managers and Rural Appraisers since 1994. He conducted his appraisal using the Uniform Standards of Professional Appraisal Practice and provided opinions regarding the property value on four occasions commencing in June 2008, with his most recent being his written appraisal report dated October 2011. Mr. Thoene arrived at a final appraised value of $3,700,000.00, excluding certain irrigation equipment that is apparently subject to some dispute as to ownership and/or whether it is part of the FDIC's collateral.

JMJ attacks Mr. Thoene's appraisal for failure to include as comparable sales two recent trustee sales conducted by the FDIC with respect to similar tracts of real property. However, a trustee's sale (essentially a foreclosure sale) cannot be expected to produce the same results as a formal marketing of the property for a consensual sale. Mr. Thoene's appraisal is well-documented and reasonable. The value asserted by JMJ is not documented at all and is not from a licensed appraiser. Therefore, I find that for purposes of this proceeding the value of the property securing the claim of the FDIC is $3,700,000.00, less the $315,000.00 due to Trotter, Inc., for a net value of $3,385,000.00.

The FDIC also objected as to the feasibility of the plan. Under the unique circumstances of this case, the feasibility argument is not very compelling. The United States District Court litigation may materially impact the balance due to the FDIC and the ability of JMJ or its principals to fund the plan of reorganization. Or, it may not. Serious issues are involved in that litigation and at this point in time, we simply do not know how it will turn out. Thus, at this stage, in order to be feasible (and

---

[1]There were other objections, but JMJ has agreed to resolve those objections in an amended plan or a stipulated confirmation order.

equitable to all concerned), the proponent need only show that JMJ will be able to fund the interest-only payments until the claim amount is determined. The plan can provide for amendment once the litigation has been resolved to address the necessary funding to properly pay the FDIC claim. Even if it turns out that the FDIC claim is in excess of what JMJ is able to fund through operations, JMJ does have alternatives, such as providing for the sale of some or all of the property.

JMJ has altered its projections since filing the plan and has agreed that certain amendments need to be made to the plan in order for it to be confirmable. In fact, JMJ may now have "actual" numbers for 2011 operations to use in its projections. Further, the plan will need to be amended in light of the evidence offered and this court's finding as to value. Therefore, the plan cannot be confirmed at this time.

IT IS, THEREFORE, ORDERED that confirmation of the amended Chapter 12 plan (Fil. #55) is denied. JMJ shall have until February 1, 2012, to file an amended plan.

DATED:  December 15, 2011.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    *Brian J. Koenig
    Michael T. Eversden/James J. Niemeier
    Philip Kelly
    United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.